The paper propounded as the last will and testament of Jane Brown, was caveated by the defendants, certain of her next of kin, upon the following grounds, to wit:
1. That the alleged testatrix had not a testamentary capacity at the date of the original will, nor at the date of the codicil thereto added.
2. That the alleged testatrix, the said Jane Brown, in the execution of the said paper writing propounded as a will, was acting under undue and fraudulent influence.
On the trial in the Court below six issues were submitted to the jury, to wit:
1. Did Jane Brown have testamentary capacity at the date of the paper writing propounded as her will? *Page 29 
2. Did she have testamentary capacity at the date of the alleged execution of the codicil to the said will?
3. Did she execute the paper purporting to be her will?
4. Did she execute the instrument of writing propounded as a codicil to said will?
5. Was the execution of the instrument purporting to be her will secured through fraudulent or undue influence upon the mind of the testatrix?
6. Was the execution of the instrument propounded as a codicil secured by fraud of undue influence?
It was in evidence that the alleged testatrix lived with the (20) defendant, Dempsey Brown, her son, for four years or thereabouts, next preceding the death of Haley Brown, another of her sons, except occasional absences on short visits, and some few weeks both before and after the death of said Haley Brown, which she spent at his house on the occasion of his last illness; and during that time, Joe C. Brown, then fifteen or sixteen years of age, one of the propounders, a son of her deceased son, John S. Brown, was there with the testatrix; that on leaving said Haley's, the said Joe C. Brown went to the house of W. R. Frazier at Trinity College to board and attend school, and the testatrix came back to Dempsey Brown's, where she staid a few weeks and then went on a visit to said Frazier's house, where Joe C. Brown was boarding as aforesaid, and there she remained for thirty-three days.
Frazier stated that soon after coming to his house the old lady, (the alleged testatrix) then about eighty years of age, and Joe C. Brown were much together; that he heard them talking together, and heard him frequently speak to her about his uncle, Dempsey, one of the caveators, and who at the time was guardian of the said Joe C. Brown, his brother and sister, having wasted their father and mother's estate, and that they, the said children and wards, would never get anything from their said uncle, Dempsey Brown.
The witness was uncertain whether this conversation was before or after the making of the will, but afterwards said he thought it was before.
Frazier also heard the old lady frequently talking about her son, Dempsey, and saying that she wanted to make a will, so that John's children could get the most of her estate; that Dempsey had wasted all that they had inherited from their father and mother, and if she did not do something for them, they would be without anything. These conversations were not in the presence of Joe C. Brown.
This witness further stated that he went for Dr. Craven to come and see her, and he wrote the script propounded; that he refused *Page 30 
(21) to become a witness to said will at first, for the reason that he did not believe that she was of a competent mind to make a will; but afterwards attested it at the suggestion of one Riddick, her agent, merely to pacify her. Witness said that the testatrix was very old and feeble, very forgetful, asking over and over again the same questions in a short time; was almost blind and very hard of hearing; and from his, the witness' observation and opportunities to judge of her during the thirty-three days she was at his house, he formed the opinion that she was not competent to make a will.
In this connection the caveators asked the witness (Frazier) if he had ever heard Joe C. Brown talking to any other person about Dempsey Brown having wasted his father's estate, while the testatrix was living at his house. This question being objected to by the propounders, was ruled out by the Court. Caveators excepted.
In the course of the trial, one Dorset was introduced by the defendants, the caveators, who stated that he was a near neighbor — living four miles from Mrs. Brown, the alleged testatrix, and knew her intimately, and had known her intimately for forty odd years; that up to the years 1857 or 1858, she was a woman of good sense, at which time she was beaten by some person who robbed her, and after that time she was feeble in body and her mind impaired, the feebleness of both increasing, according to his observation, until she became childish. She was almost blind and very hard of hearing, of a rambling disposition, and in her conversation asking a question over and over again. On one occasion, in the month of March preceding her death in February, 1871, he could not make her know him, even after telling her his name. Witness further stated that in his opinion she had not capacity in 1866 to make a will, or to do any business acts.
The caveators then proposed to ask the witness: From his knowledge of Jane Brown's mental condition, did he think that if an instrument of the length of the one propounded was read over to her, she would have capacity to understand its provisions? The (22) question being objected to, was excluded by the Court, and the caveators excepted.
Dempsey Brown, one of the caveators, stated that, in his opinion, his mother, the testatrix, at the date of the alleged will and codicil, was incapable of making a will, and that he had never heard of any wish on her part to make one, nor of her having made one, until after her death. That he was to see her on the day the pretended codicil is dated and just after it was written, and he then found her in such a condition that she did not know him, and he was unable to make her know him, even after telling her his name. *Page 31 
To sustain this witness, the caveators offered to prove his general character, but his Honor refused to hear such proof, stating that as there had been no assault upon his character, he is presumed to be of good character, and that he should so instruct the jury, and did so instruct them, which instruction was not objected to by the propounders.
The other subscribing witness to the original will, one Z. Rush, stated that he was not at Frazier's but one time for the purpose of attesting the will, and that then he did attest it. This witness denied that he hesitated to witness the will on account of any incapacity of the testatrix, but said he did hesitate to become a witness, because he was a minister of the gospel and a circuit rider, and he feared he might be called from a distant station to prove the will in Court.
Frazier, the other subscribing witness, having in his examination stated that he and Rush were together twice for the purpose of attesting the will, and that on the first of those occasions they both declined, because of the incapacity of the testatrix, and on account of this conflict in the evidence of the two subscribing witnesses, the caveators proposed to prove the general character of Frazier, which was not objected to by the propounders, but the proposed proof was rejected by the Court, for the reason that his character was presumed to be good. To this ruling the caveators excepted.
As to the execution of the codicil, the propounders offered (23) evidence that the same was executed on the 4th January, 1871; was drawn by one B. F. Hoover, and attested by him and Thomas White, at whose house the testatrix then was living. Both Hoover and White testified that Jane Brown, the alleged testatrix, was of sound mind and capable to make a will. In answer to this, Dempsey Brown, her son, and one of the caveators testified that his mother, the testatrix, did not know him when he called to see her the same day; and Dr. Winslow, the family physician, stated that he saw her two or three times in 1869, as her physician, and several other times, not professionally, the last time in November next before her death in February, and that at all of these times he found her, in his opinion, entirely incompetent to make a will, or to transact any business.
It was likewise in evidence that Hoover, one of the witnesses to the codicil, lived seventeen miles distant from the testatrix, and had not seen her for about three years, and was not with her on the occasion of drawing the codicil more than fifteen minutes. That White was the man at whose house she was living at the time, and where Joe C. Brown was a frequent visitor, and at the time addressing one of his daughters. That Joe C. Brown went for Hoover twice to come and write the codicil, and represented to him that the testatrix, besides *Page 32 
wanting him to write the codicil, wished to make him and his brother and sister a deed of gift or transfer of a certain judgment of about $1,700, on Alex. Robbins' estate; that Hoover, on such representation, furnished the said Joe C. Brown with a blank form of an assignment of a judgment; and afterwards as he went to White's to write the codicil, he went by Joe C. Brown's and let him know where he was going; that soon after reaching White's Joe C. Brown appeared, and then the testatrix produced a copy of the form of assignment in the said Joe C. Brown's handwriting, and signed it and drew an order on her agent, Riddick, for Mr. Gorrell's receipt, as he had brought suit for her on the claim. This order was presented to Riddick, (24) who refused to give up the receipt without first seeing the testatrix. Other evidence was introduced, which, not bearing upon the points decided in this Court, need not be recited.
The jury under the instructions of his Honor found all the issues in favor of the propounders. Motion for a new trial refused. Judgment and appeal by the caveators.
There was not only a direct conflict of testimony between Dempsey Brown and Frazier on the one side, and the witnesses for the propounders on the other, as to the mental capacity of the testatrix, Jane Brown; but Frazier being a subscribing witness to the will, and testifying that the testatrix was not capable of making one, stood before the Court in a very awkward position, and it would seem that his character required support.
As the question involved in this case is discussed and decided in Islerv. Dewey, at this term, we content ourselves with a reference to the opinion in that case.
Let it be certified that there is error.
PER CURIAM. Venire de novo.
(25)